UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAVEL GUARNEROS RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant. | Case No. 23-cv-06007-BLF<br><br>**ORDER DENYING DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>[Re: ECF 36] |

Plaintiff Pavel Guarneros Rodriguez ("Rodriguez") claims that his former employer, Defendant International Business Machines Corporation ("IBM"), unlawfully capped his sales commissions after representing that his sales commissions would be uncapped. Specifically, Rodriguez alleges that IBM removed him from a large account just before the close of a $30,000,000 deal he negotiated, for the purpose of depriving him of nearly $1,000,000 in commissions he earned. The operative first amended complaint ("FAC") asserts claims against IBM for (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et. seq.*, (2) unjust enrichment, and (3) punitive damages.

IBM moves to dismiss the unjust enrichment claim (Claim 2) under Federal Rule of Civil Procedure 12(b)(6), asserting that the claim is barred by the applicable statute of limitations. The Court has considered the briefing of the parties and the oral argument of counsel presented at the hearing on July 25, 2024.

The motion is DENIED for the reasons discussed below.

## I.   BACKGROUND[1]

In 2015, Rodriguez left a sales position at Salesforce to work for IBM as a cloud sales specialist. *See* FAC ¶ 21. IBM represented that its sales representatives receive compensation consisting of a base salary paired with uncapped commissions. *See id.* ¶ 23. Rodriguez was placed on an "Individual Quota Plan," also referred to as "IQP." *See id.* ¶ 25. He was provided with a PowerPoint in the first half of 2016 titled "Your 2016 Incentive Plan Individual Quota Plan – Employees," which explained the important terms of his compensation. *See id.* ¶¶ 28-29. The PowerPoint used phrases like, "earnings opportunities remain uncapped" and "payments uncapped." *Id*. Rodriguez received substantially similar PowerPoints for each successive six-month sales period. *See id.* Starting in the first half of 2018, IBM removed the phrases "earnings opportunities remain uncapped" and "payments uncapped" from the PowerPoints. *Id*. ¶ 30. However, it remained IBM's policy that sales commissions were uncapped, and IBM managers confirmed that commissions remained uncapped during sales kickoff calls at the beginning of each sales period. *See id.* ¶ 32. Rodriguez's managers told him at the beginning of each sales period that his commissions would be uncapped. *See id.* ¶ 33. Uncapped sales commissions was a core component of compensation for sales employees like Rodriguez, who were on Individual Quota Plans. *See id.* ¶¶ 37.

Immediately after recruiting Rodriguez from Salesforce, IBM tasked Rodriguez with managing key relationships and contract negotiations with Salesforce. *See* FAC ¶ 22. In 2016, Rodriguez worked to close a large deal with Salesforce. *See id.* ¶ 39. By the end of 2016, it was clear that the deal would be closing during the first half of 2017. *See id.* ¶ 40. The deal ultimately did close in 2017, resulting in the sale of $30,000,000 of IBM products to Salesforce. *See id.* ¶ 42. Rodriguez expected to earn approximately $1,000,000 in commissions on the Salesforce deal. *See id.* ¶ 43.

---

[1] The Background section is drawn from the facts alleged in the FAC, which are accepted as true for purposes of evaluating the Rule 12(b)(6) motion to dismiss. *See Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023).

1    Rodriguez did not receive those expected commissions, because in January 2017, IBM
2    suddenly removed the pending Salesforce deal from Rodriguez's territory and assigned the deal to
3    a new salesperson. *See* FAC ¶¶ 45-47. Rodriguez was given the news by his first-line manager,
4    Mark Wasserman ("Wasserman"). *See id.* Wasserman did not give any reason for the decision,
5    and when Rodriguez objected, Wasserman threatened to fire him. *See id.* Rodriguez then spoke
6    to Wasserman's supervisor, Mark Kelemen, who told him to stop mentioning the issue of the
7    commissions. *See id.* ¶¶ 48-49. The new salesperson assigned to the Salesforce account received
8    $400,000 in commissions on the Salesforce deal that Rodriguez negotiated, and Rodriguez was
9    advised that he would not be paid any commissions on the deal. *See id.* ¶¶ 43-45.

Rodriguez was assigned to a new territory with new managers, who recognized the unfairness of his situation. *See* FAC ¶¶ 50-51. At his new managers' urging, Rodriguez sought review of the Salesforce deal commissions by IBM's internal HR group. *See id.* ¶¶ 51-52. After several rounds of discussion, IBM agreed in September 2017 to pay Rodriguez $201,687.92 in commissions on the $30,000,000.00 Salesforce deal. *See id.* ¶ 54. Rodriguez asserts that the sales commissions he was begrudgingly granted were a fraction of what he should have received, and that IBM capped his commissions in violation of his incentive plan and IBM's policies. *See id.* ¶ 55. Rodriguez has since learned that IBM's treatment of him is consistent with IBM's normal business practice of recruiting good salespeople by telling them their commissions will be uncapped, and then capping the commissions of high achievers after the fact. *See id.* ¶ 58.

Rodriguez filed the present action on November 20, 2023 and filed the FAC on March 4, 2024. The FAC contains three claims: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et. seq.*, (2) unjust enrichment, and (3) punitive damages.

## II.  LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "take all allegations of fact as true and construe them in the light most favorable to the nonmoving party." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

3

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Dismissal is appropriate if the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim." *Sinclair*, 61 F.4th at 678. "Conclusory allegations cannot defeat a motion to dismiss." *Id*.

**III.   DISCUSSION**

IBM seeks dismissal of Rodriguez's unjust enrichment claim as time-barred. Rodriguez asserts that his unjust enrichment claim is not time-barred because the statute of limitations was tolled during the pendency of a federal class action before another judge in this district, *Comin v. International Business Machines Corp.*, Case No. 3:19-cv-07261-JD.

**A.    Applicable Limitations Period**

"The limitations period for unjust enrichment depends on the statute of limitations governing the underlying claim." *Wu v. Sunrider Corp.*, No. 17-4825 DSF (SSX), 2018 WL 6266577, at *5 (C.D. Cal. May 22, 2018), *aff'd*, 793 F. App'x 507 (9th Cir. 2019). Where the unjust enrichment claim is based on a quasi-contract theory, it is governed by the two-year limitations period for "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing[.]" *Id*. (quoting Cal. Civ. Proc. Code § 339). However, where the unjust enrichment claim is to recover money or other benefit obtained by fraud or mistake, it is governed by the three-year limitations period for "[a]n action for relief on the ground of fraud or mistake." *Id*. (quoting Cal. Civ. Proc. Code § 338(d)). The FAC expressly alleges that the unjust enrichment claim is not based on an oral or implied contract. *See* FAC ¶ 108. The parties apply the three-year limitations period. *See* Mot. at 5, ECF 30. The Court agrees that Rodriguez's unjust enrichment claim is governed by a three-year statute of limitations.

**B.    Absent Tolling, the Unjust Enrichment Claim is Time-Barred**

Rodriguez's unjust enrichment claim is based on IBM's allegedly unjust retention of commissions on the Salesforce deal that Rodriguez claims he should have been paid in 2017. *See* FAC ¶¶ 8-12, 109-115. It is unclear from the face of the FAC whether Rodriguez asserts that the

4

1   claim accrued in January 2017, when he was removed from the Salesforce account, or September
2   2017, when he was paid approximately $200,000 in commissions rather than the higher amount he
3   allegedly earned.  *See id*. ¶ 8 (alleging removal from the Salesforce account in January 2017), ¶ 12
4   (payment of approximately $200,000 in commissions in September 2017).  IBM argues that under
5   either date the unjust enrichment claim is time-barred, as Rodriguez did not file the present suit
6   until November 20, 2023, more than three years after the later of the two possible accrual dates.
7   *See* Compl., ECF 1.  The Court agrees that absent tolling of the three-year limitations period,
8   Rodriguez's unjust enrichment claim is time-barred.

### C. Tolling During Pendency of *Comin* Class Action

Rodriguez contends that the limitations period was tolled during the pendency of the *Comin* class action.  *Comin* was filed on November 4, 2019 on behalf of IBM salespeople who were advised that their commissions would be uncapped only to find out later that IBM capped their sales commissions.  The *Comin* court granted final approval of a class action settlement, which included settlement of a class claim for unjust enrichment, on October 20, 2023.  *See Comin* Final Approval Order, ECF 146 in Case No. 3:19-cv-07261-JD.  Rodriguez opted out of the *Comin* settlement and filed the present action on November 20, 2023.  *See* Compl., ECF 1.  There is no dispute that if the statute of limitations for Rodriguez's unjust enrichment claim was tolled during the pendency of *Comin*, the claim is timely.

Rodriguez relies on the *American Pipe* tolling doctrine, under which "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties[.]"  *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974).  IBM contends that *American Pipe* tolling does not apply because the original *Comin* complaint did not include a claim for unjust enrichment and the later-filed consolidated complaint, which did include a claim for unjust enrichment, did not relate back to the original complaint.  IBM's argument is unpersuasive for several reasons.

First, the Ninth Circuit has held that *American Pipe* tolling applies even if the later individual action is not identical to the prior class action.  *See Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985) ("We find no persuasive authority for a rule which would require

5

1   that the individual suit must be identical in every respect to the class suit for the statute to be

2   tolled."). In *Tosti*, the Ninth Circuit applied *American Pipe* tolling where the individual suit

3   "involved the same allegations that were made in the class suit," even though the claims asserted

4   in the individual suit were not identical to the claims asserted in the class suit. *Id*. Here, the

5   original *Comin* complaint did not allege a freestanding claim for unjust enrichment, but it did

6   allege unlawful capping of commissions and expressly sought disgorgement of unjust enrichment

7   as a form of relief. Under *Tosti*, the fact that the original *Comin* complaint did not include a

8   freestanding claim of unjust enrichment would not preclude application of *American Pipe* tolling.

9   IBM's reliance on *Card v. Duker*, 122 F. App'x 347, 349 (9th Cir. 2005), is misplaced. IBM's

10  citation to that decision violates Ninth Circuit Rule 36-3(a), dictating that "[u]npublished

11  dispositions and orders of this Court issued before January 1, 2007 may not be cited to the courts

12  of this circuit" except in circumstances not applicable here.

13        Even if IBM were correct that the individual action must be identical to the class action for

14  *American Pipe* tolling to apply, the pleading in *Comin* was amended to include a claim for unjust

15  enrichment prior to approval of the class action settlement. The claim for unjust enrichment

16  related back to the original *Comin* complaint under Federal Rule of Civil Procedure 15(c), which

17  provides that, "An amendment to a pleading relates back to the date of the original pleading when

18  . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or

19  occurrence set out – or attempted to be set out – in the original pleading[.]" IBM contends that the

20  amendment to add the unjust enrichment claim did not relate back to the original *Comin* complaint

21  because it was too late under the scheduling order issued by the *Comin* court. That argument

22  borders on the frivolous. The amended pleading was accepted by the district court and was the

23  operative pleading at the time settlement of the *Comin* class action was approved.

24        The Court concludes that all of IBM's arguments against application of *American Pipe*

25  tolling are without merit. However, a decision issued after completion of the briefing on the

26  present motion calls into question whether *American Pipe* tolling may be applied in actions (such

27  as this one) where subject matter jurisdiction is premised on diversity and only state law claims

28  are alleged. *See Nazem v. Int'l Bus. Machines Corp.*, No. 23-CV-06010-RFL, 2024 WL 2746013,

at *1 (N.D. Cal. May 29, 2024). *Nazem*, which is pending before another court in this district, also involves an individual's unjust enrichment claim against IBM for capping sales commissions. As here, IBM brought a motion to dismiss the unjust enrichment claim on statute of limitations grounds and the parties' briefing focused on the potential applicability of *American Pipe* tolling during the pendency of *Comin*. The *Nazem* court questioned the applicability of *American Pipe* and *sua sponte* raised the possibility that equitable tolling lies under California law. *See id.* The *Nazem* court determined that the requirements for equitable tolling under state law were satisfied, denied IBM's motion to dismiss on that basis, and declined to decide whether tolling also was warranted under *American Pipe*. *See id.* at *2-*3 & n.1.

At the hearing on the present motion, the Court inquired whether the parties were familiar with the *Nazem* decision, and both counsel answered in the affirmative. The Court engaged in a colloquy with counsel as to the propriety of applying California's equitable tolling doctrine rather than *American Pipe* tolling, and specifically inquired whether it mattered which tolling doctrine the Court applied. Both counsel stated that it made little difference which doctrine the Court chose to apply, agreeing that if tolling were proper under one doctrine it would be proper under the other. Where, as here, the Court applies a state statute of limitations, it certainly would be appropriate to apply California's equitable tolling doctrine. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1199 (9th Cir. 1988) ("Where a district court applies or borrows a state statute of limitations, it is also required to apply the state's equitable exceptions, to the extent these are consistent with federal law.").

Under California's equitable doctrine, tolling applies "when an injured person has several legal remedies and, reasonably and in good faith, pursues one." *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 923 (1983) (internal quotation marks, citation, and brackets omitted). The rule may be applied where there is "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Id*. at 924. The Court finds these requirements to be met here. IBM had timely notice of the unjust enrichment claim asserted in *Comin*, both because the original *Comin* complaint sought unjust enrichment as a

remedy and because the unjust enrichment claim added in the amended pleading related back to the filing of the original *Comin* complaint.  The Court perceives no prejudice to IBM if Rodriguez is allowed to proceed with his individual claim.  There is no suggestion on this record that evidence has been lost to the passage of time and, presumably, IBM began preserving evidence related to its alleged policy of capping commissions when the *Comin* action was filed.  Finally, it appears that Rodriguez acted in good faith when he opted out of the *Comin* settlement, which was finalized in October 2023, and filed the present individual action in November 2023.

Based on the foregoing, the Court finds that the statute of limitations on Rodriguez's unjust enrichment claim was tolled during the pendency of *Comin*, possibly under *American Pipe* and certainly under California's equitable tolling doctrine.  Rodriguez's unjust enrichment claim therefore is timely, and IBM's motion to dismiss that claim is DENIED.

**IV.  ORDER**

(1) Defendant IBM's partial motion to dismiss the unjust enrichment claim (Claim 2) as time-barred is DENIED;

(2) This order terminates ECF 30; and

(3) Defendant shall file an answer to the first amended complaint within 21 days.

Dated:  August 19, 2024

_____
BETH LABSON FREEMAN
United States District Judge